ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GARY ANDERSON,<br><br>Defendant. | CASE NO. CR 11-00795 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

The United States respectfully requests that this Court sentence defendant Gary Anderson to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $1,000 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

//

# BACKGROUND

Defendant Gary Anderson is charged with participating in the bid-rigging conspiracy in San Mateo County from July 2010 to October 2010. Dkt. 1. Anderson worked with codefendant Henry Pessah. Presentence Report ("PSR") ¶ 15. Pessah would research and advise Anderson on the values of properties, and Anderson financed the purchases. *Id.*

In early 2010, Anderson began going to property auctions in San Mateo County. *Id.* ¶ 16. Anderson intended to buy properties to rehab. *Id.* Anderson knew co-conspirator Pessah because he had purchased a bakery from Pessah in the past. *Id.* Anderson asked Pessah about the auctions and then set up a business entity called KMA Properties. *Id.* During Anderson's first time bidding, co-conspirator and "Big 5" member Mo Rezaian bid up the property until Anderson dropped out. *Id.* Anderson came to understand that the Big 5 controlled the auctions. *Id.*

In May 2010, co-conspirator Troy Kent approached Anderson during an auction and asked how much it would cost to have Anderson tell Pessah to stop bidding on a property. *Id.* ¶ 17. Anderson declined, but later Pessah explained to Anderson that the only way to purchase a property was to agree to pay the Big 5 to stop bidding. *Id.* Anderson did not approve of payoff agreements, but believed that they were necessary to compete in the auctions. *Id.* Anderson did not stop Pessah from entering payoff agreements on Anderson's behalf, and Anderson also began entering into payoff agreements himself. *Id.* Anderson knew about Pessah's payoff agreements and financed them. *Id.*

Anderson also personally made agreements and payoffs to co-conspirators. *Id.* ¶ 18. For example, on July 21, 2010, Pessah attended an auction for 900 Rose Court, Burlingame. *Id.* During the auction, Anderson negotiated a payoff amount with co-conspirator Dan Rosenbledt and made a payoff agreement with co-conspirators Rosenbledt, Rezaian, Jim Appenrodt (on behalf of Joe Giraudo), Laith Salma, and Kent. *Id.* Anderson later coordinated the meetings for making the payoffs, and personally handed over envelopes containing $4,500 each to complete the payoffs. *Id.* Anderson stated that he was embarrassed that he had made the payoffs and knew it was wrong at the time. *Id.*

Anderson participated in four payoff agreements. His plea agreement reflects a volume of commerce of $1,387,463, based on the three rigged properties that he purchased. *See* Dkt. 75. The volume of commerce does not reflect the bid rigging agreement that Anderson made in which he received payoff money. Anderson received $1,000 in payoff money for agreeing not to bid on one property. PSR ¶ 20.

On October 27, 2011, Anderson was charged by information with bid rigging and mail fraud in San Mateo County. Dkt. 1. On February 15, 2012, Anderson pleaded guilty and began cooperating with the government's investigation. Dkt. 16. In September 2017, Anderson withdrew from his plea agreement by stipulation and entered a new plea agreement to the bid-rigging charge only. Dkt. 72-75.

## ARGUMENT

### A. Sentencing Guidelines Calculations

#### 1. Criminal History

In Paragraph 12 of the plea agreement, the parties agree that Anderson's Criminal History Category is determined by the Court. Dkt. 75. The Presentence Report ("PSR") calculates Anderson's Criminal History Category as I, based on no criminal history. PSR ¶¶ 36-40.

#### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 35. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. *Id.* ¶¶ 26-35. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

#### 3. Fine and Restitution

The PSR calculates a fine range of $20,000 to $69,373, consistent with the plea agreement. PSR ¶ 72; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the

volume of commerce, but not less than $20,000). In the plea agreement, the government agreed to recommend a fine between $3,000 and $30,000. Dkt. 75. This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement. In conjunction with its custodial recommendation, the government recommends a $3,000 fine.

The government recommends restitution in the amount of $1,000, consistent with the plea agreement. Dkt. 75.

**B.     Basis for Downward Departure for Substantial Assistance**

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation. The government recommends a 30 percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of 8 months.

The timing, significance, nature and extent of Anderson's cooperation warrant a 30 percent reduction. Anderson entered his plea agreement pre-indictment on February 15, 2012, and immediately began cooperating in the investigation. His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.

Additionally, Anderson provided a candid interview with the FBI. During his interview, Anderson provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements. Anderson also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.

For these reasons, a 30 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Anderson's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines. The commentary to the Guidelines makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background. Given Anderson's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent. The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities. Anderson did not originate the conspiracy, but he joined in willingly.

The government's recommended sentence also adequately considers the history and characteristics of defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his lack of prior criminal history.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 30 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Gary Anderson to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $100 special assessment, and $1,000 in restitution.

Dated: April 19, 2018

Respectfully submitted,

/s/
MICHAEL RABKIN
Trial Attorney
United States Department of Justice
Antitrust Division